**TRINITY RIVER AUTHORITY, et al., Appellants,**

v.

**Carla Leigh WILLIAMS, et al., Appellees.**

No. 09 81 072 CV.

Court of Appeals of Texas, Beaumont.

Sept. 8, 1983.

Rehearing Denied Sept. 29, 1983.

Roger Rider, David Crawford, Asst. City Atty., Houston, for appellants.

M.A. Lehmann, W. James Kronzer, Houston, for appellees.

## OPINION

DIES, Chief Justice.

Carla Leigh Williams, the surviving wife of Richard Michael Williams, and the mother of Jacob Phayne Williams and Ina Williams, and Helen E. Kroner, joined by her husband, Earl Kroner, as plaintiffs below sued the Trinity River Authority of Texas and the City of Houston as defendants below. Plaintiff Helen E. Kroner is the sur-

viving mother of Mark Phillips Magaziner. Plaintiff Ina Williams is the surviving mother of Richard Michael Williams. Richard Michael Williams and Mark Phillip Magaziner (sometimes hereafter "Williams" and "Magaziner") were drowned on the 19th of February, 1977, in Polk County, Texas, while on a fishing trip on the lower side of Lake Livingston Dam and Spillway. A fishing boat in which Williams and Magaziner were riding was caught and sunk in back currents of the water below Lake Livingston. A suit for negligence followed. Defendant Trinity River Authority (hereinafter "TRA") was sued under the Texas Tort Claims Act, *Art. 6252–19 et seq., TEX. REV.CIV.STAT.ANN.* (Vernon 1970). We have previously had this case before us on venue questions. *Williams v. Trinity River Authority,* No. 8246 (Tex.Civ.App.—Beaumont, August 23, 1979, writ dism'd w.o.j.).

Additionally, plaintiffs contended the accident occurred on navigable waters of the United States, asserting admiralty jurisdiction under maritime law. The case was submitted to a jury, which found: Special Issue No. 1, TRA failed to give an adequate warning of dangerous back currents existing in the waters below the restricted area of Livingston Dam. Special Issue No. 2, that such failure was negligence and, Special Issue No. 3, a proximate cause of the deaths of Williams and Magaziner. Special Issue No. 4, that TRA's failure to maintain a floating cable across the surface of the Trinity River below Livingston Dam was negligence and, Special Issue No. 5, a proximate cause of the deaths. Special Issue No. 6, that prior to the accident the City of Houston knew that dangerous back currents existed and, Special Issue No. 7, failed to give adequate warning of such dangerous back currents, Special Issue No. 8, which was negligence and, Special Issue No. 9, a proximate cause of the deaths. Special Issue No. 10, that the failure of the City of Houston to maintain a floating cable across the river was negligence which, Special Issue No. 11, was a proximate cause of the accident. That, Special Issue No. 12, the City of Houston was an owner occupier of

the premises; that, Special Issue No. 13, City and TRA were joint operators of the Livingston Dam Project. Special Issue No. 14, they (the jury) failed to find that Williams and Magaziner should have known of the dangerous back currents; found that, Special Issue No. 15, Williams and Magaziner were negligent in entering the Trinity River in the boat, and with the motor in question (the jury answered "no" to five other inquiries concerning contributory negligence in this issue); that such negligence, Special Issue No. 16, was a proximate cause of their deaths; that the percentages of negligence were as follows: TRA, 45%; City of Houston, 25%; Williams, 15%; Magaziner, 15%, Special Issue No. 17; and that the dangerous back currents were caused by the operation of the water release equipment or floodgates at the dam, Special Issue No. 20. Findings on the damage issues were made in Special Issues Nos. 21, 22, 23, and 24. Judgment was thereafter entered for plaintiffs against defendants, jointly and severally, from which defendants have perfected appeal to this Court. The parties herein will be referred to as they were below or by name.

## CITY'S APPEAL

■ City's first five points of error complain of the jury's finding that the City was a "joint operator" of the premises. The 1964 agreement between the City and TRA provided for, inter alia, the City furnishing certain engineering services, cooperation on lands, joint application to the Texas Water Commission, all plans and construction subject to approval by both, joint responsibility in carrying out plans and specifications, cooperation in keeping in force all permits, City having the right to take over the project on certain contingencies, City receiving 70% of the water yield, City paying for maintenance and operation expenses. As we wrote in the venue appeal: "The facts disclose that TRA and City were joint operators of the dam and each used the riverbed to transport its share of the water to its respective diversion downstream." The jury had sufficient probative evidence to find City was a joint operator of the

project. *See Saucedo v. Phillips Petroleum Co.,* 670 F.2d 634 (5th Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 87, 74 L.Ed.2d 81 (1982); *Bond v. Otis Elevator Company,* 388 S.W.2d 681 (Tex.1965); *Ross Anglin & Son v. Brennan,* 466 S.W.2d 832 (Tex.Civ.App.— Austin 1971, no writ). These points of error are overruled.

■ City's sixth point of error complains of the trial court admitting a photograph of a sign saying "Livingston Dam and Reservoir—A Joint Project of the Trinity River Authority of Texas and the City of Houston." City urges, in effect, that the erection of the sign was not proven to be an act of the City. First, all the evidence supports the truth of the sign; the project was certainly a "joint project". Next, the issue submitted to the jury was one of "joint operation", not the same thing as "joint project". The witness Manis testified the sign was put up by TRA years ago but was paid for by City. Many of City's representatives (Mayor, Project Manager) had been to the project since erection of the sign. And, of course, as earlier noted herein, the application of the defendants to the State, as well as the permit, were jointly made and the jury saw these in evidence (without objection). Under these circumstances, we find no error, or certainly no harmful error. *TEX.R.CIV.P.* 434. This point is overruled.

City's point of error seven complains of the court's refusal to instruct the jury: "You are instructed that under Texas Law the water flowing in the Trinity River below Lake Livingston Dam is owned by the State of Texas." Point of error number eight complains of the court's failure to instruct the jury: "You are instructed that the State of Texas has granted to the Trinity River Authority and the City of Houston a right to use and divert the waters impounded by Lake Livingston Dam. For purposes of this case, you are instructed that a right to use and divert the water does not make the City of Houston an owner of the water." In point of error number nine the requested instruction denied by the trial court was: "You are instructed that

under Texas Law, the bed of the Trinity River is owned by the State of Texas. Thus under Texas Law, the City of Houston does not own the bed of the Trinity River." And, in point of error number ten, the denied instruction was: "You are instructed that the fact that the State of Texas authorized the City of Houston to use the bed and banks of the Trinity River for the purpose of transporting such stored waters does not make the City of Houston an occupier of the bed or banks of the Trinity River."

■ We fail to see how any of these requested instructions affect the issues submitted to the jury. A court "shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict . . . ." *TEX.R.CIV.P. 277.* The only function of a special explanatory instruction is to assist the jury in answering the issues and, in this area, the trial court has wide discretion. *Mobil Chemical Company v. Bell,* 517 S.W.2d 245 (Tex.1974); *Union Oil Co. of California v. Richard,* 536 S.W.2d 955 (Tex.Civ.App.—Beaumont 1975, no writ). These points of error are overruled.

■ City's eleventh point of error complains of the trial court's refusal to submit issues concerning decedents' failure to use an anchor. We have no evidence whether decedents were equipped with an anchor or not and, more important, if they were, whether that would have done them any good. Hall's testimony generally as to the function of an anchor had no relevancy under the conditions existing when this accident occurred, or certainly, he did not so testify. Only controlling issues raised by the evidence should be submitted. *3 R. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 12.06.1, et seq.* (rev. 1970). This point is overruled.

City's twelfth point of error follows:

"The . . . Court erred in rendering judgment for Plaintiffs against the City as the Plaintiffs failed to establish a breach of the duty owed to Plaintiffs, to-wit the duty owed a trespasser, by

either the TRA or the City as set forth in Tex.Rev.Civ.Stat.Ann. Art. 1b."

This statute, says City,

" . . . clearly states that owners of property who give permission to others for purposes of fishing owe no greater degree of care than that owed to a trespasser. The duty owed to a trespasser is not to injure him willfully, wantonly, or through gross negligence. *Burton Construction and Shipbuilder [Shipbuilding] Company v. Broussard* [154 Tex. 50], 273 S.W.2d 598 (Tex.1955)."

■ The answer to this is, the decedents were not trespassers where they entered the Trinity River. If they ever became "trespassers" it was because of the back currents which the jury found were negligently caused by defendants. This statute and the case cited have no application to the fact situation presented in the case at bar. *See Atchinson v. Texas & P. Ry. Co.,* 143 Tex. 466, 186 S.W.2d 228 (Tex.1945); *Skelly Oil Co. v. Johnston,* 151 S.W.2d 863 (Tex.Civ.App.—Amarillo 1941, writ ref'd). This point of error is overruled.

■ City's point of error number thirteen urges its actions at the project were in a governmental capacity, and therefore exempt from liability under a negligence theory. It is well settled in Texas that a city's function in supplying water to its inhabitants is proprietary. *City of Houston v. Bush,* 566 S.W.2d 33 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *City of Waco v. Busby,* 396 S.W.2d 469 (Tex.Civ.App.—Waco 1965, writ ref'd n.r.e.); *Boiles v. City of Abilene,* 276 S.W.2d 922 (Tex.Civ.App.—Eastland 1955, writ ref'd). This point of error is overruled.

Since City was not acting in a governmental capacity, it had no exemption from liability based on any claim dependent upon a discretionary act under the Tort Claims Act. Therefore, City's points fourteen, fifteen, and sixteen are without merit and are overruled.

City's point of error number seventeen urges the jury's answer to Special Issue No. 14 inquiring whether decedents knew or

should have known of dangerous back currents is against the great weight and preponderance of the evidence.

■ We review this point under the guidance of *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). It is true that a number of witnesses testified to having seen the back current. These included project employees and a game warden. However, there is no evidence that either Magaziner or Williams had ever been on the Trinity when the dam was discharging as it was on the day of the accident. There is no evidence either knew or should have known of back currents, when the water was actually running downstream away from the dam. The jury was entitled to fail to find this knowledge existed.

■ The answer to the issue was a negative finding on an issue where the City had the burden of proof. The "no evidence" point does not raise an issue for review. The negative answer means the City failed to discharge its burden to convince the jury by a preponderance of the evidence to make an affirmative finding to the issue. Since evidence is not required to support a negative answer, the fact that there is "no evidence" is immaterial. *Guernsey Comm. Fed. Credit Union v. Gonzalez,* 539 S.W.2d 896 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.); *Prunty v. Post Oak Bank,* 493 S.W.2d 645 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). This point is overruled.

■ The City's eighteenth point complains of error in "rendering judgment for plaintiffs ... on the basis of the jury's negative response to Issue No. 14 ..." for the reason that "the specific inquiry into dangerous 'back' currents is improperly restrictive because the proper inquiry should be as to the 'dangerous condition' of the river in general." We have discussed Special Issue No. 14 under the preceding seventeenth point of error. This eighteenth point of error is not directed to the court's refusal to submit any particular requested issue. This complaint is directed only to the restrictive wording of the issue. The only

objection to this issue is based upon the grounds "that a negative answer to that issue would be against the great weight and preponderance of the evidence." No objection was made to the issue upon the grounds complained of in this point of error. Under these circumstances, the complaint made under this point of error is waived. *Stewart v. Fitts,* 604 S.W.2d 371 (Tex.Civ. App.—El Paso 1980, writ ref'd n.r.e.); *Davis v. Thompson,* 581 S.W.2d 282 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). This point is overruled.

■ The City's nineteenth point of error complains of the submission of four separate special issues "because the language therein improperly inquires into dangerous back currents existing in the waters below the restricted area as this area is neither controlled nor owned by the City or TRA and cannot serve as the basis for liability under a premise theory." Assuming, arguendo, such issues were improperly submitted—which we do not decide—such submission would not constitute reversible error. The jury found in response to Special Issues Nos. 10 and 11 that the failure of the City to maintain a floating cable across the surface of the Trinity River below Livingston Dam at the time of the occurrence was negligence and that such negligence was a proximate cause of the deaths of Williams and Magaziner. These jury findings would establish liability, insofar as negligence is concerned, on the part of the City without regard to the jury's finding as to the issues complained of by the City. This point is overruled.

City's twentieth point complains of error in failing to properly "diminish each plaintiff's recovery" pursuant to the provisions of *TEX.REV.CIV.STAT.ANN. art. 2212a.* It is unnecessary to address this point in view of our disposition of appellees' cross-point with reference to decedents' contributory negligence.

■ The City's twenty-first and twenty-second points of error are the same as TRA's eleventh and twelfth points. City has not presented argument under its points of error but "adopts by reference the

argument and authorities ... which are found in the brief of TRA." Because of our disposition of TRA's points, we overrule City's points of error twenty-one and twenty-two.

The City, in its final point of error, complains of error in "rendering judgment against the City making the City liable for an amount greater than amount for which TRA would be liable because the City's liability, if based on a joint venture theory, would be derivative or vicarious in nature and consequently the City's liability can be no greater than TRA's." The City contends its liability should be limited to the maximum liability provided by the Texas Tort Claims Act because of the finding of the jury that it was a "joint operator" with TRA. It argues that City cannot have a liability in excess of the limitation provided for by the Act. This argument is without merit.

■ The limitation upon the amount of damages awarded against TRA is provided by the express terms of the Tort Claims Act, wherein TRA's liability for damages is limited to $100,000.00. We have determined that the function of the City is proprietary and, as such, the Tort Claims Act does not apply to the City. The limitation upon TRA's liability is strictly statutory. No such statutory limitation has been placed upon the City's liability. We will not create such limitation when the Legislature has refused to do so. This point is overruled.

We find no reversible error and the judgment against the City is Affirmed.

## TRA'S APPEAL

TRA's first three points of error follow:

"The trial court erred in denying appellant's motion for judgment notwithstanding the verdict for the reason that the jury finding that the dangerous back currents in the waters below the Livingston Dam were caused by the operation of the water release equipment or floodgates by appellant (Special Issue No. 20) vitiates as a matter of law the jury findings concerning appellant's failure to warn of

such dangerous back currents (Special Issues Nos. 1–3) as the Texas Tort Claims Act does not waive appellant's immunity from suits for damages arising in this manner.

"The trial court erred in denying appellant's motion for judgment notwithstanding the verdict for the reason that the jury finding that the dangerous back currents in the waters below the Livingston Dam were caused by the operation of the water release equipment or floodgates by appellant (Special Issue No. 20) vitiates as a matter of law the jury findings concerning appellant's failure to maintain a floating cable across the river below the dam (Special Issues Nos. 4–5) as the Texas Tort Claims Act does not waive appellant's immunity from suits for damages arising in this manner.

"The trial court erred in failing to submit appellant's tendered issue inquiring whether the necessity of maintaining a floating cable across the river arose out of the operation of water release equipment or floodgates by appellant."

TRA has argued these three points together and we will address them in the same manner.

*Section 3* of the Texas Tort Claims Act, *Art. 6252–19, TEX.REV.CIV.STAT.ANN.* (Vernon Supp.1982–1983), provides:

"Each unit of government in the state shall be liable for money damages for ... death when proximately caused by the negligence ... of the officer or employee ... arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state ...."

TRA contends that the purpose of *Section 3* of the Tort Claims Act is to waive sovereign immunity for governmental units in operating motor-driven equipment, but it expressly excludes from the waiver of immunity claims arising out of the operation

of water release equipment. We do not agree with this contention.

■ The clear meaning and import of the wording of *Section 3* of the Act waives governmental immunity for damages arising from the negligent operation or use of a motor-driven vehicle and motor-driven equipment. The exception from such waiver of governmental immunity applies to the negligent operation or use of a "motor-driven vehicle and motor-driven equipment used in connection with" the operation of floodgates or water release equipment. Plaintiffs in the case at bar have not alleged or sought recovery upon grounds of negligent operation or use of such motor-driven equipment used in connection with the operation of floodgates or water release equipment. The negligence relied upon by plaintiffs was the failure to warn of the dangerous back currents and the failure to maintain a floating cable across the river below the dam. Plaintiffs have made no complaint of any particular act of negligence in operating or using any motor-driven equipment used in connection with the operation of floodgates.

The Texas Tort Claims Act provides for a limited waiver of governmental immunity in three general areas: (1) use of publicly owned automobiles, (2) premises defects, and (3) injuries arising out of conditions or uses of property. *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976). As stated above, the Act, however, specifically disclaims liability for negligent acts or omissions "in connection with the operation of floodgates or water release equipment by river authorities . . . ." *Section 3.*

Plaintiffs do not claim the operation of water release equipment was negligently performed. Instead, plaintiffs predicate liability on the failure to warn of dangerous back currents and the failure to maintain a barrier cable across the river. These points of error are overruled.

■ TRA's fourth and fifth points urge that defendants' failure to maintain and failure to warn were discretionary acts and therefore the Texas Tort Claims Act does not waive defendants' immunity from damages.

■ In *Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ.App.—Fort Worth, 1980, writ ref'd n.r.e.), the Court discussed the discretionary act exemption as it applies to *Section 14(9), Art. 6252–19, TEX.REV. CIV.STAT.ANN.* (Vernon 1970):

"[T]he decision of *whether* to provide mattresses is a policy decision falling within the exemption. The decision as to *which particular type* of mattress to use is incidental to the policy to provide a mattress." (emphasis in original)

In the case at bar, the decision of whether to provide for safety would be a policy decision, while the decision regarding the particular type of precaution to be taken would be incidental to the policy of safety. *State v. Terrell,* 588 S.W.2d 784, 788 (Tex. 1979), discusses the discretionary act exemption:

"Thus, if the negligence causing an injury lies in the formulation of policy—*i.e.,* the determining of the *method* of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act." (emphasis in original)

The record in the case at bar shows the decision not to warn or maintain a floating cable was made at the operational level. If it is possible under Texas law, no policy decision was ever made to ignore boaters below the dam. This point is overruled.

TRA's sixth point urges that the fact decedents made no payment to defendants for their use of the river vitiates the finding concerning defendants' failure to maintain a floating cable across the river, and such failure breached no duty owed plaintiffs' decedents. Point of error number seven makes the same contention concerning the finding of defendants' failure to warn of dangerous back currents. And, point of error number eight contends that the jury's finding that plaintiffs' decedents did not know or should not have known of the dangerous back currents is against the

great weight and preponderance of the evidence. These points are grouped together in TRA's brief and will be so dealt with herein.

■ Plaintiffs' decedents paid to enter the river where they entered. There is no evidence TRA was due or charged any fee. Certainly right or possession of the river below the dam was at least not exclusive. Therefore, there was a duty to use ordinary care to warn plaintiffs' decedents and protect them from harm and dangers. *Hernandez v. Heldenfels*, 374 S.W.2d 196 (Tex. 1963). Point of error number eight has been answered in the portion of this opinion addressed to City's contentions. These points of error are overruled.

■ TRA's points of error nine and ten are grouped together. They are:

"The trial court erred in entering judgment on a premises defect theory for the reason that appellant is not the owner or occupier of the Trinity River below the restricted area as a matter of law; the trial court erred in submitting Special Issue No. 1 for the reason that there is no duty to warn of so specific a danger under *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976)."

These points have been discussed herein in response to City's points of error one through three, twelve and eighteen. Assuming, arguendo, TRA was not an "occupier" below the restricted area, the jury found that it created the condition of danger. It, therefore, had a duty to warn Williams and Magaziner of the risk. In addition to the authorities cited earlier herein, *see Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942). These points are overruled.

TRA's eleventh, twelfth and thirteenth points, grouped together in its brief, follow:

"The trial court erred in submitting Special Issues Nos. 2 and 4 for the reason that there was no competent evidence, or, alternatively, there was insufficient evidence, that the failure to warn of dangerous back currents or the failure to maintain a floating cable was negligent;

"The trial court erred in submitting Special Issues Nos. 3 and 5 for the reason that there was no competent evidence, or, alternatively, there was insufficient evidence, that the failure to warn of dangerous back currents or the failure to maintain a floating cable proximately caused appellees' decedents' deaths.

"The trial court erred in instructing the jury with a definition of ordinary negligence in connection with Special Issues Nos. 2 and 4 for the reason that a specialized standard of care should be applied to a River Authority in operating a dam."

■ These points have been discussed in City's points of error twelve, eighteen, twenty-one and twenty-two. A warning to Williams and Magaziner not to enter the restricted area was of no value to them since they were drawn into that area by the back currents. The record shows that previously there was a cable maintained across the river and Williams may have once tied up to it. While TRA seems to believe this to be important, we fail to see its relevancy or importance in this case. Unless the water was high on the previous occasion, and the record indicates it was not, the back current would not be present or at least not be a factor. No authority is cited by TRA for imposing a special standard of care for a River Authority. These points of error are overruled.

Plaintiffs have a crosspoint urging there is no evidence to support a finding of contributory negligence as to Williams and Magaziner. The jury found both men [Special Issue No. 15(a)] negligent in entering the Trinity River under the circumstances in question, in the boat, and with the motor in question, which was a proximate cause of the accident. In Special Issue No. 17, it was determined that 15% was the amount of negligence attributable to each of these decedents. Following the verdict of the jury, the plaintiffs moved to disregard these findings.

■ The jury also found that neither of these two men knew or should have known of the dangerous back currents.

(Special Issue No. 14) It was certainly legal and ordinary for the decedents to enter the Trinity River at the place they chose. TRA's evidence of similar high water from a 2700 CFS discharge and what other persons similarly situated might have seen from that area really does not reach the question of contributory negligence in view of the jury's answer to Special Issue No. 14. There must be shown a basis to anticipate danger, or knowledge of danger, before one can be held guilty of contributory negligence. *See Dumas v. Horn,* 529 S.W.2d 88, 89 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.); *Thornton v. Campise,* 459 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *Ussery v. Ewell Hodges, Inc.,* 417 S.W.2d 332 (Tex. Civ.App.—Tyler 1967, writ ref'd n.r.e.); *Volkmer v. Curlee,* 261 S.W.2d 870 (Tex.Civ. App.—Galveston 1953, writ ref'd n.r.e.). To hold that the decedents were negligent in entering the river at a permitted point when they had no knowledge of back currents created by the discharge, would be almost as strained as finding them negligent for even going fishing that day. Such a finding, in our opinion, violates the holding of *Kerby v. Abilene Christian College,* 503 S.W.2d 526, 528 (Tex.1974), which requires a causal connection between the alleged contributory negligence and the accident. This point of error is sustained.

▮ Finally, plaintiffs urge the trial court should not have limited the amount of the judgment against TRA (to the amounts provided in the Tort Claims Act) because the accident had a significant relationship to traditional maritime activity. Plaintiffs cite *Richardon v. Foremost Ins. Co.,* 641 F.2d 314 (5th Cir.1981), as authority for their position. We believe their reliance on this case is misplaced because it involved the collision of two boats on the Amite River. We believe the rule of *Executive Jet Aviation, Inc. v. Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), prevails. Both the occurrence of a tort on navigable waters and a significant relationship between the tort and traditional commercial maritime activity are required. The findings of negligence by City and TRA and the evidence of the cause of this accident are not traditional commercial maritime activity. This point of error is overruled.

In view of our holding that the decedents should not be charged with contributory negligence, the judgment of the trial court should be reformed so as to allow plaintiffs to recover the additional amount that the trial court reduced the award for damages as found by the jury.

▮ The judgment of the trial court is reformed so as to award judgment for Mrs. Carla Leigh Williams the sum of $500,-000.00, and Jacob Phayne Williams, a minor, the sum of $200,000.00, and Mrs. Ina Williams the sum of $50,000.00 against defendants, jointly and severally, and the liability of Trinity River Authority of Texas, upon this joint and several judgment, shall be limited to $100,000.00, as provided by the Texas Tort Claims Act. The judgment of the trial court is further reformed so as to award judgment for Mrs. Helen Kroner the sum of $50,000.00 against defendants, jointly and severally. As so reformed, the judgment of the trial court is Affirmed.

All costs of this appeal are assessed against defendants, jointly and severally.

Affirmed as reformed.