TRINITY RIVER AUTHORITY et al., Petitioners,

v.

Carla Leigh WILLIAMS et al., Respondents.

No. C–2530.

Supreme Court of Texas.

Feb. 27, 1985.

Rehearing Denied June 5, 1985.

Mayor, Day & Caldwell, Roger Rider and Mark R. Zeidman, F.J. Coleman, Jr., City Atty., David Lee Crawford, Asst. City Atty., Houston, for petitioners.

W. James Kronzer, Maurice A. Lehmann, Houston, Bill Jones, Livingston, Coy U. Spawn, Jr., Houston, for respondents.

McGEE, Justice.

This is a wrongful death action involving issues of governmental immunity, maritime law and contributory negligence. Plaintiffs, as legal survivors of Richard Michael Williams and Mark Phillips Magaziner, sued the Trinity River Authority (TRA) and the City of Houston (City). Based on the jury's verdict, the trial court rendered judgment for the plaintiffs, although reducing damages by the percentage of contributory negligence attributed to the decedents. The trial court also limited TRA's liability to $100,000 per decedent pursuant to the Texas Tort Claims Act. The court of appeals modified and affirmed the trial court's judgment so as to eliminate the damage reduction for contributory negligence. 659 S.W.2d 714. The judgment of the court of appeals is affirmed in part and reversed in part.

Williams and Magaziner drowned in 1977 while fishing in the Trinity River below the Livingston dam and spillway. They put their boat into the water below the "restricted area" of the dam, but the back currents of the water caught the boat and drew it up into the restricted area near the

dam. Williams and Magaziner drowned when the boat was pulled into a turbulent main current and capsized.

The jury found that TRA and the City were joint operators of the Livingston Dam project; the City was found to be an owner-occupier of the premises. In addition, the jury found that TRA and the City each failed to give adequate warning of the dangerous back currents existing in the waters below the restricted area of the dam and such failure was negligence, proximately causing the deaths. The jury also found that TRA and the City each negligently failed to maintain a floating warning cable across the surface of the Trinity River below the Livingston Dam, proximately causing the deaths.

The jury found that Williams and Magaziner were contributorily negligent and that such contributory negligence proximately caused their deaths. Negligence was apportioned as follows:

TRA _____45%
City _____25%
Williams_____15%
Magaziner _____15%

The jury found total damages to be $750,000 for Williams' survivors and $50,000 for Mazaginer's survivors. The trial court rendered judgment on the jury verdict, reducing each survivor's award by the fifteen percent contributory negligence of the decedents. TRA and the City were held jointly and severally liable, subject to TRA's statutory liability limitation.

*Governmental Immunity*

The court of appeals overruled one group of TRA's points of error that claimed it had governmental immunity based on the so-called "floodgate" provision of the Texas Tort Claims Act. The court of appeals held that the floodgate exception to liability did not apply since plaintiffs did not allege the operation of the floodgates was negligently performed but rather relied upon allegations of failure to warn of and protect against the dangerous back currents.

Section 3 of the Texas Tort Claims Act provides, in part:

Each unit of government in the state shall be liable for money damages for ... personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee ... arising from the operation or use of a motor-driven vehicle and motor-driven equipment, *other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state*, ... *or* death or personal injuries so caused from *some condition or some use of tangible property, real or personal.* ...

Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 3(b) (Vernon Supp.1984) (emphasis added).

It is the area of motor-driven equipment, wherein the legislature responded to various river authorities and provided a specific exemption for waiver of sovereign immunity for floodgate operations. Greenhill & Murto, *Governmental Immunity*, 49 Tex. L.Rev. 462, 468 (1971). The Act, however, further provides that its provisions will be given a liberal construction in order to effect the legislative intent. Tex.Rev.Civ. Stat.Ann. art. 6252–19, § 13 (Vernon Supp. 1984). The other part of section 3 providing for waiver of governmental immunity, for injuries caused by "some condition or some use of tangible property," is a category especially subject to a broad interpretation, *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 32 (Tex.1983), and we agree with the court of appeals that this provision is applicable.

▮ In this case, the plaintiffs maintained that TRA, as owner-occupier of the Livingston Dam project, negligently failed to warn about dangerous back currents and negligently failed to maintain a barrier cable across the river. These failures are independent of the "operation of floodgates or water release equipment" provision. Accordingly, we hold that the "floodgates" exception does not apply and affirm the

judgment of the court of appeals in this respect.

### Admiralty Jurisdiction and Sovereign Immunity

■ The court of appeals opinion concluded that federal maritime law did not apply because decedents' accident did not involve "traditional *commercial* maritime activity." 659 S.W.2d at 725 (emphasis added). The court of appeals incorrectly required a commercial element; the Supreme Court expressly disapproved the "commercial" requirement in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 675–76, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982).

■ Respondents claim that the maritime law issue is material because if such law applies, the judgment of the trial court should be reformed so as to afford complete relief against both TRA and the City. We disagree. Even if maritime law should apply, this fact situation is within the terms of the Texas Tort Claims Act. Sovereign immunity has been waived; however, in waiving sovereign immunity, the state is free to limit the terms of the consent to be sued. *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 53–54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944); *Lyons v. Texas A & M University*, 545 S.W.2d 56, 58 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The fifth circuit, in addressing the Texas Tort Claims Act, found the notice of death requirement "obviously ... a limitation which the state clearly intended to apply to tort claims under the Act whether or not they are under state or maritime law." *Kamani v. Port of Houston Authority*, 702 F.2d 612, 615 (5th Cir. 1983). Likewise, the dollar limitation represents the state's intent to limit the waiver of sovereign immunity. Therefore, the $100,000 limitation on TRA's liability remains whether state or federal law is applied.

### Contributory Negligence

■ The jury found that Williams and Magaziner were negligent "[i]n entering the Trinity River, under the circumstances in question, in the boat, and with the motor in question" and that such negligence proximately caused their deaths. The jury, however, in another issue refused to find that Williams and Magaziner knew or should have known of the dangerous back currents. The court of appeals held that no causal connection existed between the harm and the negligent acts because, without knowledge of the back currents, Williams and Magaziner had no basis to anticipate danger. We disagree.

■ It is not necessary that the exact path leading to injury be anticipated as long as the general danger surrounding the event is appreciated. *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970). The issue involved "is not what the wrongdoer believed would occur; it is whether he ought reasonably to have foreseen that the event in question, or some similar event, would occur." *Id.* at 440. There is evidence that Williams and Magaziner, at the very least, should have reasonably foreseen the dangerous events of capsizing and drowning when they entered the Trinity River "in the boat, and with the motor in question." Accordingly, we believe there was a basis to support the jury's findings of a causal connection between the harm and the contributory negligence. The judgment of the court of appeals is reversed in part and the damage reduction based on the contributory negligence findings is reinstated.

The judgment of the court of appeals is affirmed in part; the judgment of the court of appeals, modifying the trial court's judgment as to contributory negligence, is reversed and the trial court's judgment in that respect is also affirmed.

ROBERTSON, J., files a concurring and dissenting opinion in which SPEARS, J., joins.

RAY, J., files a dissenting opinion.

ROBERTSON, Justice, concurring and dissenting.

I concur in part and dissent in part. The court of appeals was correct in its holding

that there was no causal connection between the alleged contributory negligence and the accident. 659 S.W.2d at 725. Accordingly, I disagree with the majority's opinion to the extent that it reinstates the damage reduction for contributory negligence.

Special Issue No. 14 inquired whether the two men knew or should have known of the dangerous back currents. The jury answered "no." Thus, the jury refused to find that Williams and Magaziner knew of the danger that ultimately caused their deaths.

It was not the mere turbulence of the waters that killed the two men. Indeed, they fished for some time on those waters before being caught up in the back currents. The danger of the river was the back currents; and it was the back currents which caused the deaths of Williams and Magaziner. By its answer to Special Issue No. 14, the jury refused to find that the men appreciated the general danger of the river or that they could have reasonably foreseen the risk involved. Therefore, as a matter of law, they should not be held contributorily negligent. *See Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970). In all other respects, I concur with the result reached by this Court.

SPEARS, J., joins in this concurring and dissenting opinion.

RAY, Justice, dissenting.

I respectfully dissent. First, I disagree with the majority's holding that Trinity River Authority's (TRA) liability is limited to $100,000. Also, I oppose the majority's employment of contributory negligence to reduce the damage award payable to Williams and Magaziner.

The majority rejects Williams' and Magaziner's argument that maritime law controls this cause. The applicability of maritime law is significant because under maritime law, TRA's liability is not limited to $100,000. The entire reasoning of the majority in this regard is: "[t]his fact situation is within the terms of the Texas Tort

Claims Act." The question I am compelled to ask the majority is: why?

As the majority correctly notes, the court of appeals erroneously required a "traditional commercial maritime activity" for the application of maritime jurisdiction. Rather, maritime jurisdiction attaches when the activity involved occurs on a navigable waterway and has a "sufficient nexus to traditional maritime activity." *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982). Here, there is no question that the Trinity River is a navigable waterway. Also, fishing and boating are the most traditional maritime activities. Thus, maritime law should apply. *See Kohl v. United States*, 712 F.2d 286 (7th Cir.1983) (maritime law governs the drowning of three fishermen near a lock and dam on the Mississippi River); *Estate of Callas v. United States*, 682 F.2d 613 (7th Cir. 1982) (maritime law governs the drowning of two fishermen due to the dangerous back currents caused by the release of water at a dam); *McCormick v. United States*, 680 F.2d 345 (5th Cir.1982) (maritime law governs the collision of a pleasure boat with an unmarked piling in a navigable waterway).

Even though the majority concludes that the Texas Tort Claims Act controls this cause, they continue to analyze the effects of maritime law. The majority seems to hold that maritime law might apply; but even if it does, the Texas Tort Claims Act still would limit the amount of damages recoverable against TRA to $100,000. In my opinion, maritime law governs this cause entirely and it is not appropriate to apply a state law damage limitation to a properly pleaded and litigated federal cause of action.

The majority also reduces Williams' and Magaziner's damages based on a jury finding that they were negligent in entering the Trinity River under the circumstances. In so doing, the majority refuses to give effect to another jury finding that Williams and Magaziner did not know or should not have known of the dangerous back cur-

rents. I agree with the court of appeals analysis that one must either anticipate or have knowledge of the danger "before one can be held guilty of contributory negligence." 659 S.W.2d at 725. Since the deaths were caused by the back currents resulting from the discharge of the water at the dam and TRA's negligence in failing to maintain a floating cable across the surface of the river, I believe the fact that Williams and Magaziner neither knew, nor should have known of the danger precludes the application of contributory negligence to lower the damages award. In other words, how can someone be held responsible for failing to appreciate a risk that a jury found no reason for that person to realize or anticipate in the first place?

In conclusion, the court of appeals made but one error, that being its misapplication of maritime law to require a traditional *commercial* maritime activity to invoke maritime jurisdiction. The majority, however, dismisses that error and, without any reasoning, baldly asserts that the Texas Tort Claims Act applies to limit TRA's liability. The majority further errs in reducing the damages awards of two people who did not know or should not have known of the invisible peril that would lead to their tragic deaths. This is a classic maritime lawsuit. Here, the TRA, while discharging water at a dam on a navigable waterway, negligently failed to perform its proprietary function of maintaining a cable across the river with warning signs to alert unsuspecting people of the hazardous back currents. Consequently, maritime law should govern this cause and Williams' and Magaziner's awards should not be reduced.