

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00254-CV

JAVIER LOPEZ                                                                         APPELLANT

V.

WILDCAT CRANES, INC.                                                       APPELLEE

----------

### FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 048-258518-12

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

At the conclusion of Appellant Javier Lopez's case-in-chief and after three days of trial testimony, the trial court granted a directed verdict against Lopez on his negligence claim against Appellee Wildcat Cranes, Inc. for personal injuries that he sustained in a workplace accident. Because, viewed in the light most

[1]*See* Tex. R. App. P. 47.4.

favorable to Lopez, more than a scintilla of evidence exists that Wildcat Cranes was negligent and that Wildcat Cranes's negligence was a proximate cause of Lopez's injuries—the grounds asserted by Wildcat Cranes for its directed verdict—we will reverse the trial court's judgment and remand this case to the trial court for a new trial.

## II. FACTUAL BACKGROUND

The injuries occurred while Lopez was working as a welder on a demolition project. The demolition required that a large steel beam be removed from the building's ceiling structure; Lopez was responsible for cutting one of the beams' connected ends to free it for removal. The beam was about twenty-five feet above the building's roof's surface, so Lopez used a scissor lift placed on the roof to reach the beam. Another worker was ready to cut the beam's other end as soon as Lopez finished cutting his.

The beam weighed thousands of pounds, requiring a crane to extract it. Wildcat Cranes contracted to provide a crane, and its employee Jose Cavazos operated the crane. Cranes vary in capacity, and the one Wildcat Cranes provided had a 12,000-pound capacity. Because the crane remained on street level, Cavazos relied on the lift director Daniel Layne to estimate any beam's weight and to direct the extraction. Layne communicated the weight estimate to Cavazos by radio, and Cavazos determined whether it fell within the crane's capacity.

2

To prevent beams from falling after they were cut, the crane would hold the beam in place, applying a counterweight matching the estimated weight that was expected to be unsupported when the beam was cut. Layne estimated the weight of the entire beam that Lopez had prepared to cut to be about 12,000 pounds, so he told Cavazos to apply a 6,000-pound counterweight. But Layne's estimate was flawed; he either underestimated the beam's weight or overlooked that it was not rigged to the crane near the end being cut. When Lopez cut the beam, Cavazos immediately knew that "[s]omething was very wrong." A large "jolt" shook the crane, a safety alarm sounded, a warning light popped on, the instrument dial showing the weight of the crane's load in relation to its capacity shot "past" the yellow zone, and the crane's computer system "coded out," meaning the computer shut down as a safety measure in response to the crane's load. Cavazos felt the crane cab shaking "like football players shaking your car."

Meanwhile on the roof, the beam, upon being cut, fell about four feet, and either because the beam snagged the safety lanyard connected to Lopez or because the beam hit the raised scissor-lift platform, Lopez was thrown off the platform. Lopez remained connected to the lift by his safety lanyard, preventing him from falling the twenty-five feet to the roof; he dangled from the platform by his lanyard, and he was able to climb back on the platform without any injury from the fall.

Cavazos did not know what was happening on the roof, but because the crane was shaking and the alarms were going off, he radioed Layne, "What's

3

going on?" Layne responded, "Okay. Come up. Give me two clicks," which is about a one- to two-inch raise. When Cavazos began raising the beam it contacted the scissor lift, and the scissor lift toppled with Lopez on it. This time, Lopez fell all the way to the roof, seriously injuring his shoulder.

### III. TRIAL COURT ERRED BY GRANTING WILDCAT CRANES'S MOTION FOR DIRECTED VERDICT

In a single issue, Lopez argues that the trial court erred by granting Wildcat Cranes's motion for directed verdict on negligence and proximate cause.

### A. Standard of Review and Law on Motions for Directed Verdict

A directed verdict is proper only under limited circumstances: (1) when the evidence is insufficient to raise a material fact issue or (2) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). In reviewing a directed verdict, we follow the standards for assessing legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We review the evidence in the light most favorable to the person suffering the adverse judgment, and we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827; *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). A directed verdict is improper if there is more than a scintilla of evidence

4

on the grounds underlying the directed verdict. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004). More than a scintilla exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

Rule 268 of the Texas Rules of Civil Procedure provides that "a motion for a directed verdict shall state the grounds therefore." Tex. R. Civ. P. 268. This requirement is designed to allow the movant's opponent an opportunity to introduce additional evidence to meet the grounds asserted for the directed verdict and to aid the trial court in ruling on the motion. *See, e.g.*, Billy Ray Dickerson, Note, *Appeal and Error—Practice and Procedure—Trial Practice—Appellate Review of Motion for Directed Verdict Limited to Grounds Ruled on By Trial Court*—Burnett v. Howell, 294 S.W.2d 410 (Tex. Civ. App.—El Paso 1956, writ ref'd n.r.e.), 35 Tex. L. Rev. 846, 847 (1957).

### B. Wildcat Cranes's Motion for Directed Verdict

Wildcat Cranes articulated the following grounds for its directed verdict motion:

> At this time, the defendant would move for a directed verdict on the issue of negligence and proximate cause. I believe that there is no evidence or less than a scintilla of evidence that the negligence, if there is any—but certainly no evidence that anything the plaintiff has called negligence was the proximate cause of the accident.

5

Also, the fact that the plaintiff has come to court under false pretenses and is, I think, misusing the courts based on his status as illegal.[2]

### C. Evidence of Negligence and Proximate Cause

Lopez pleaded that Wildcat Cranes was negligent in two ways: (1) by using a crane lacking sufficient capacity for the demolition and (2) via Cavazos's continuation of crane operations upon realizing that the beam weighed more than Layne had estimated. Lopez called four witnesses: Jason English, a safety engineer who testified as an expert; Cavazos; Ron Wertz, the owner of Wildcat Cranes; and Lopez. Wildcat Cranes obtained permission to call its own expert, Jim Wiethorn, out of order during Lopez's case in chief and relies heavily on his testimony in support of its directed verdict.

English testified that the crane lacked sufficient capacity to lift the beam. A postaccident investigation revealed that the beam weighed, according to Wertz, more than 12,000 pounds but "probably . . . no more than 13,000." According to Cavazos, the crane had an official maximum capacity of only 12,000 pounds. He and Wertz, however, noted that the crane's official capacity reflected only 85% of

---

[2]To the extent that Wildcat Cranes asserts in its brief that it moved for a directed verdict on legal (as opposed to evidentiary) matter-of-law issues, such as no duty and the no-foreseeability element of duty, we disagree. Wildcat Cranes's motion for directed verdict, recited *in toto* above, requested a directed verdict solely on two evidentiary matter-of-law issues—that no evidence existed that it had engaged in any negligent act and that any negligent act by Wildcat Cranes was not a proximate cause of Lopez's injuries. Consequently, these are the issues we address. Wildcat Cranes is free on remand to assert whatever legal as-a-matter-of-law issues it desires in a motion for summary judgment or otherwise.

the crane's real capacity; as explained by Wertz, "the United States . . . will only let us use 85 percent of what the crane will really lift, so there is a 15 percent buil[t]-in safety factor." In Wertz's opinion, the crane could handle the lift. English disagreed; he stated that "the crane itself was not a[n] appropriate capacity for this particular lift." English also considered it improper to use a 12,000-pound capacity crane to lift a beam estimated to weigh 12,000 pounds, which Layne had estimated the beam weighed. English asserted that Wildcat Cranes should not have proceeded as far as it did with that load-capacity crane.

English, Wertz, and Wiethorn all agreed that a company must train its workers to stop a job when the workers know the job cannot go forward safely to protect others from harm. Wertz and Wiethorn did not think Cavazos faced such a situation when his crane's alarms sounded. Wertz explained that the alarms and computer responded to a "shock load," which Cavazos defined as "a bunch of weight" that hits the crane too fast, causing the crane's boom to bounce. According to Wertz and Wiethorn, shock loads are common and can result from wind gusts alone. Wertz testified that employees can continue crane operations once the shock load passes, and he saw no reason why Cavazos could not proceed to lift the beam two clicks. Wiethorn distinguished a lift from the two clicks Cavazos raised the beam, which he characterized as a "fine-tune adjustment."

In contrast to Wertz and Wiethorn, English said that when the beam dropped, Cavazos should have recognized "something's not right" and

7

reevaluated the entire lift before proceeding. English further stated that "instead of stopping, [Cavazos] continued on with the lift, which ultimately knocked over this scissor lift."

Cavazos testified that once the safety alarms activated, he had a responsibility to contact Layne and inform him of "what's going on." Cavazos, as well as Wiethorn, agreed that Cavazos did that. Cavazos and Wiethorn contended that once Cavazos informed Layne of the safety concerns, Layne had the sole responsibility to decide whether to proceed. But Wertz affirmed during cross-examination that the ultimate decision to proceed rested with Cavazos.

It is common for a crane operator to feel some bump or drop when the crane takes the weight of a beam. But Cavazos knew when Lopez cut the beam that "[s]omething was wrong . . . [s]omething was very wrong." And Cavazos, who later testified that Layne had the responsibility of deciding whether to stop operations or to proceed, acknowledged that in the type of situation he had experienced on the day in question, he was supposed to stop the demolition and to reevaluate rather than proceed. Cavazos did not stop operations.[3]

---

[3]Wildcat Cranes argues otherwise, noting that Cavazos stopped long enough for Lopez to climb back onto the scissor lift platform. But the stoppage mandated according to English and according to some of Cavazos's testimony is not simply an inactive passage of time but the intentional cessation of operations to allow workers to convene and reevaluate the entire lift.

8

Cavazos knew Lopez was on the roof cutting the beam, and it is undisputed that the scissor lift toppled when Cavazos lifted the beam. Lopez's injuries stemmed from the scissor lift's fall.

### D. Law on Negligence and Proximate Cause

Wildcat Cranes premised its motion for directed verdict on the evidentiary issues of negligence and proximate cause, so we must determine whether the evidence, viewed in the light most favorable to Lopez, would enable a jury to reasonably find that Wildcat Cranes breached either of the two duties advanced by Lopez and whether the breach, if any, proximately caused Lopez's injury. *See Exxon Corp.*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 827.

Determination of whether a duty has been breached is purely a question of fact. *Aguirre v. Vasquez*, 225 S.W.3d 744, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App.—Dallas 2004, pet. denied). The two elements of proximate cause are cause in fact and foreseeability. *HMC Hotel Prop. II Ltd. P'ship v. Keystone-Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014). Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it—i.e., but for the act or omission—the harm would not have occurred. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). Conduct amounts to a substantial factor if it would lead reasonable people to regard it as a cause. *See Bostic v. Ga.-Pac. Corp.*, 439 S.W.3d 332, 337 (Tex. 2014). Cause in fact is not established where the defendant's negligence does no more than

9

furnish a condition that makes injury possible. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Generally, it is a question for the jury. *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 756 (Tex. 1975), *abrogated on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978); *J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Beeson*, 835 S.W.2d 689, 698 (Tex. App.—Dallas 1992, writ denied); *see Wal-Mart Stores, Inc. v. Hoke*, No. 14-99-00503-CV, 2001 WL 931658, at *8 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, no pet.) (not designated for publication). More than one cause in fact may exist for an injury. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001); *Morrell v. Finke*, 184 S.W.3d 257, 284 (Tex. App.—Fort Worth, 2005, pet. denied).

Foreseeability exists when the actor as a person of ordinary intelligence, should have anticipated the dangers his negligent act creates for others. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Moreover,

> foreseeability does not require that the actor foresee the particular accident or injury which in fact occurs. Nor does foreseeability require that the actor anticipate just how the injury will grow out of a particular dangerous situation. All that is required is that the injury be of such a general character as might reasonably have been anticipated.

*Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223–24 (Tex. 1988) (citations omitted); *see City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex. 1987) ("Foreseeability does not require that a person anticipate the precise manner in which injury will occur once a negligent situation that he has created exists.");

10

*Trinity River Auth. v. Williams*, 689 S.W.2d 883, 886 (Tex. 1985) ("The issue involved 'is not what the wrongdoer believed would occur; it is whether he ought reasonably to have foreseen that the event in question, or some similar event, would occur.'" (quoting *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970))); *Motsenbocker v. Wyatt*, 369 S.W.2d 319, 323 (Tex. 1963) ("All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'" (quoting *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939))).

### E. Application of the Law to the Facts

### 1. Negligence

Viewing the evidence in the light most favorable to Lopez, reasonable jurors could find that Wildcat Cranes had acted negligently by using a 12,000-pound capacity crane to hold a beam that Layne had estimated to weigh 12,000 pounds and that had, in fact, weighed over 12,000 pounds. Although the crane held only part of the beam's total weight because the beam's other side was still attached, English testified that the crane lacked sufficient capacity for the project in general and that Wildcat Cranes should not have proceeded as far as it did with that load-capacity crane. Wertz and Wiethorn disagreed, but a competition between witnesses or experts is a fact and credibility question for the jury, which

11

could reasonably disregard the contrary evidence. *See Exxon Corp.*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 827.

Alternatively, viewing the evidence in the light most favorable to Lopez, reasonable jurors could find that Wildcat Cranes had acted negligently through its employee Cavazos, who should not have continued operations after the crane took on the beam's weight because he "knew something was very wrong." Wildcat Cranes insists that once Cavazos informed Layne of the safety concerns, Layne had the sole responsibility to decide whether to proceed. There is some testimony supporting that position, namely Wiethorn's testimony and part of Cavazos's testimony. Testimony supporting Lopez's position also exists: Wertz said that it was Cavazos's decision on whether to proceed, and Cavazos testified that his training required that he stop and reevaluate the lift before proceeding. Disregarding the evidence contrary to Lopez because reasonable jurors could, *see City of Keller*, 168 S.W.3d at 823, more than a scintilla of evidence supports a finding that Cavazos breached his duty by failing to stop operations for a reevaluation of the lift once the alarms alerted, rather than following Layne's directions to raise the beam.

### 2. Proximate Cause

It is undisputed that the beam tipped the scissor lift when Cavazos lifted it, satisfying the but-for component of causation. *See Rodriguez-Escobar*, 392 S.W.3d at 113. That is, but for (1) Wildcat Cranes's negligent act in failing to provide a crane with a load capacity that would prevent the unexpected four-foot

12

drop of the beam and (2) Cavazos's failure to stop operations when he knew something was very wrong, the incident would not have occurred.

Wildcat Cranes nonetheless identifies on appeal other circumstances that it alleges were a new and independent or superseding cause of the incident, such as the beam's being lodged under the scissors-lift platform and Layne's instruction to raise the beam. Because more than one cause in fact may exist for an injury, a reasonable juror could agree that these variables contributed to the incident and nevertheless still find that Wildcat Cranes's negligent acts were a substantial factor in causing the scissor lift to tip and without which the harm would not have occurred. *See Harrison*, 70 S.W.3d at 784; *Morrell*, 184 S.W.3d at 284.

To the extent that Wildcat Cranes argues on appeal that these variables—the beam's being lodged under the scissors-lift platform and Layne's instruction to raise the beam—constitute new and independent or superseding causes of the incident that destroyed any casual connection between Wildcat Cranes's negligence and the incident in question, a new and independent or superseding cause that is reasonably foreseeable by the defendant does not break the chain of causation. *See James v. Kloos*, 75 S.W.3d 153, 161 (Tex. App.—Fort Worth 2002, no pet.) (also listing factors to consider in determining whether an act is a new and independent or superseding cause); *see also Columbia Rio Grande Healthcare, LP v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009) (citing *Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 367, 250 S.W.2d 379, 383–84 (1952)).

13

Viewing the evidence in the light most favorable to Lopez, reasonable jurors could also find that the general character of the injury to Lopez was foreseeable and that this event or some similar event was foreseeable as the result of Wildcat Cranes's alleged negligence in deciding to utilize the load-capacity crane that it did for this job and through its employee Cavazos who did not stop operations and reevaluate the lift when he should have. *See, e.g.*, *Brown*, 764 S.W.2d at 223–24; *Pike*, 727 S.W.2d at 517; *Trinity River Auth.*, 689 S.W.2d at 886. When Lopez cut the beam, the crane's safety alarm sounded, a warning light popped on, the instrument dial showing the weight of the crane's load in relation to its capacity shot "past" the yellow zone, and the crane's computer system "coded out"; thus, Cavazos knew that "[s]omething was very wrong." Although Cavazos could not see Lopez or the events unfolding on the roof, Cavazos knew that Lopez was cutting the beam, that Lopez was close enough to the beam to be cutting it, that the beam weighed thousands of pounds, and that the beam had dropped unexpectedly. Cavazos nevertheless proceeded to lift the beam, which was contrary to his training requiring him to stop operations and to reevaluate the lift. It was foreseeable that using the crane to lift the beam, which had already shifted unexpectedly, created a dangerous situation for someone like Lopez who was standing on a raised platform near the beam. Viewing the evidence in the light most favorable to Lopez, *see Exxon Corp.*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 827, and disregarding the contrary evidence because reasonable jurors could, Lopez's injury was foreseeable. *See Brown*, 764

14

S.W.2d at 223–24; *Pike*, 727 S.W.2d at 517; *Trinity River Auth.*, 689 S.W.2d at 886; *Clark*, 452 S.W.2d at 440; *Motsenbocker*, 369 S.W.2d at 323; *Carey*, 133 Tex. at 35, 124 S.W.2d at 849.

## F.  Summary

Viewing the evidence in the light most favorable to Lopez and disregarding all contrary evidence because reasonable jurors could, more than a scintilla of evidence exists that Wildcat Cranes used a crane lacking sufficient capacity for the lift and that Cavazos should have stopped operations.  *See Exxon Corp.*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 827.  Viewing the evidence in the light most favorable to Lopez and disregarding all contrary evidence because reasonable jurors could, more than a scintilla of evidence exists that Lopez's injuries were a foreseeable consequence of Wildcat Cranes's negligence.  *See Brown*, 764 S.W.2d at 223–24; *Pike*, 727 S.W.2d at 517; *Trinity River Auth.*, 689 S.W.2d at 886; *Clark*, 452 S.W.2d at 440; *Motsenbocker*, 369 S.W.2d at 323; *Carey*, 133 Tex. at 35, 124 S.W.2d at 849.  We therefore sustain Lopez's first issue.[4]

---

[4]In a separate issue, Lopez challenges the trial court's directed verdict to the extent it was based on Lopez's status an illegal immigrant.  Because our ruling on Lopez's first issue is dispositive, we need not consider his second issue.  *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary for disposition of the appeal).  Our failure to reach this issue, however, is not to be construed as approving Wildcat Cranes's arguments in the trial court that Lopez was not entitled to relief based on his immigration status.

15

## IV. CONCLUSION

Having sustained Lopez's first issue, we reverse the trial court's directed verdict and judgment for Wildcat Cranes. We remand the case for further proceedings consistent with this opinion.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED: July 30, 2015