Lucie Allen PEEK, et al, Appellants,

v.

OSHMAN'S SPORTING GOODS, INC., Appellee.

No. 04-88-00023-CV.

Court of Appeals of Texas, San Antonio.

March 22, 1989.

Rehearing Denied April 19, 1989.

R. Gary Stephens, Joe B. Stephens, Stephens & Clark, Houston, for appellants.

Karen A. Angelini, Roy C. Brock, Nissa A. Mykleby, Brock & Kelfer, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CARR, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a summary judgment granted for appellee Oshman's Sporting Goods, Inc. [Oshman's] in a negligence and wrongful death and survival action brought against Oshman's and others. The lawsuit alleged negligence on the part of Oshman's in the sale of a handgun to Marvin Wiley Deberry, Jr., which Deberry used to shoot and kill Clyde Peek. Appellants, plaintiffs below, are Peek's heirs. This cause of action was severed from the causes against the other defendants.

▮▮▮▮ A defendant who moves for summary judgment has the burden to show as a matter of law that no material issue of fact exists as to the plaintiff's cause of action and movant is entitled to judgment as a matter of law. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). *See Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983). The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine fact issue as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970). *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). When the defense is in the nature of a denial, the burden of the defendant moving for summary judgment is to establish that upon a controlling issue essential to his recovery the plaintiff would not have enough evidence to go to the jury. *See Sifford v. Santa Rosa Medical Center*, 524 S.W.2d 559, 561 (Tex.Civ. App.—San Antonio 1975, no writ). TEX.R. CIV.P. 166a(c) provides that the motion for summary judgment shall state the specific grounds therefor. Further, "[t]he judgment sought shall be rendered forthwith

... and the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response." *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex.1979). Both the reasons for summary judgment and the objections to it must be in writing and before the trial judge at the hearing. *Id.*

The action in the trial court was a negligence action. It was essential to the claim under the wrongful death statute to advance an underlying negligence theory against Oshman's. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 71.002(b), 71.003(a) (Vernon 1986). Accordingly, in summary judgment proceedings, Oshman's assumed the burden of showing as a matter of law that there was no genuine issue of material fact as to one of the constituent elements of negligence which plaintiffs must prove at trial.

The trial court's order indicated the bases of its opinion:

The Court, after considering the pleadings, discovery, affidavits and depositions on file and having considered Defendant's Motion for Summary Judgment, Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment ... and having heard the arguments of counsel, is of the opinion that Defendant's Motion is well taken and should be granted.

The question before the trial court was whether there were genuine issues of fact with regard to the elements of duty, breach of duty and causation, which were essential to appellants' negligence cause of action. Whether there was a genuine issue of fact as to violation of any statute constituting negligence per se was also contested.

▮▮▮▮ Plaintiffs did not specifically allege a violation of any statute on the part of Oshman's which might establish a claim of negligence per se.[1] There is no dispute

---

1. Unexcused violation of a statute setting an applicable standard of care constitutes negligence as a matter of law if the statute is de-

signed to prevent an injury to that class of persons to which the injured party belongs. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex.

that prior to sale of the firearm, Oshman's required Deberry to complete the transferee's portion of the federal Treasury form ATF 4473 Part 1 (Firearms Transaction Record) mandated by federal law. However, on appeal, plaintiffs specifically refer to the federal statute, 18 U.S.C. § 922(d) and the regulation at 27 C.F.R. § 178.99(c), which prohibit licensed dealers from selling firearms or ammunition to a person whom the dealer knows or has reasonable cause to believe has been adjudicated mentally defective or has been committed to any mental institution. Plaintiffs' petition appears to follow the language of these federal laws, without specifically referring to them or, more important, alleging that any law had been violated in the sale of a firearm by Oshman's to Deberry. Thus it appears the argument on appeal is that Oshman's sold a firearm and ammunition "in spite of ... federal firearms regulations." However, there is no pleading in their petition to support a case of negligence per se.

We agree that Oshman's has not been shown to have committed any statutory violation which could constitute negligence per se. Our conclusion, however, is not based upon an absence of specific pleading of a statute upon which a claim of negligence per se might be based. In *Ellsworth v. Bishop Jewelry and Loan Co.*, 742 S.W. 2d 533 (Tex.App.—Dallas 1987, no writ), the plaintiff (appellant) had been wounded and her husband killed by a customer who had purchased a firearm from defendant. The customer had allegedly been committed to a mental institution prior to the purchase. The defendant was specifically alleged to have violated 18 U.S.C. § 922(d), which states in pertinent part:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person

. . : . .

(4) has been adjudicated as a mental defective or has been committed to any mental institution.

1987); *see Nixon v. Mr. Property Management*

In *Ellsworth, supra,* which was not a summary judgment case, the issue whether or not the defendant knew or had reasonable cause to believe that the purchaser/assailant was a person who had been committed to a mental institution went to the jury, which answered "no." 742 S.W.2d at 535. Although the plaintiff did not prevail on that issue, *Ellsworth* may be viewed as support for the proposition that in Texas a violation of 18 U.S.C. § 922(d) may constitute a basis for a claim of negligence per se.

Unlike *Ellsworth*, in this case, as a matter of law, the summary judgment evidence presented no genuine issue of fact whether Oshman's personnel sold a firearm or ammunition to Deberry in violation of 18 U.S. C. § 922(d), that is, knowing or having reasonable cause to believe that Deberry had been adjudicated a mental defective or had been committed to any mental institution. Plaintiffs' second amended petition alleged:

At the time of the completion of the Department of Treasury firearms form ATF F4473, the defendant Oshman's Sporting Goods, Inc. either knew or should have known that the defendant Marvin Wiley Deberry, Jr. was incapable of acting in a mentally responsible manner and should have realized that he at least, if he had been adjudicated mentally defective or had ever been committed to a mental institution, that at the time of this attempt to purchase the pistol in question was insane by reason of a disease, mental defect, or illness....

Nowhere in the pleadings is it specifically alleged, nor in the summary judgment evidence does it clearly appear, that Deberry was adjudicated mentally defective or had ever been committed to a mental institution prior to Deberry's purchase of a weapon from Oshman's. Clearly, any determination of Deberry's mental condition made *subsequent* to the shooting (i.e., during Deberry's murder trial) would be irrelevant to Oshman's statutory duty at the time of sale. There is only vague reference in the deposition testimony of Ann

Co., 690 S.W.2d 546, 549 (Tex.1985).

Nelson, who witnessed Deberry in the process of purchasing the pistol, to Nelson's knowledge, at the time of purchase, of Deberry's "past mental problems."

Oshman's points to the evidence that when Deberry filled out form ATF 4473, he answered question 8(e) in the negative. Question 8(e) inquires, "Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution?" We note Oshman's argument that because it required Deberry to fill out federal form ATF 4473, and Deberry answered the questions on that form concerning his mental condition in the negative, Oshman's, having complied with regulations, could not, as a matter of law, have violated a statutory duty toward Peek. We reject that argument since regardless of a purchaser's answers on the form, a seller might know or have reasonable cause to believe that the purchaser has been adjudicated as a mental defective, or had been committed to any mental institution. Oshman's also maintains, however, that while Deberry was purchasing the firearm, or filling out the form, he did nothing to lead the sales clerk to believe that he was lying on the form.

The lynchpin of plaintiffs' argument that there is a genuine issue of fact as to violation of federal law, and thus as to breach of duty, is the testimony of Ann Nelson, an Oshman's customer who observed Deberry in the process of purchasing the firearm which he used to shoot Clyde Peek. Plaintiffs submitted as summary judgment evidence, testimony of Nelson at Deberry's murder trial, deposition testimony of Nelson, and an affidavit of Nelson. Nelson stated that when she conversed with and observed Deberry while Deberry was purchasing a firearm in Oshman's, he appeared to be nervous, uptight and in a hurry. This testimony is controverted to some extent by the deposition testimony of Tommy Urbanczyk, the sales clerk who sold the firearm to Deberry. We find, however, that Nelson's testimony does not, as a matter of law, raise a genuine issue of fact whether Oshman's personnel sold any firearm or ammunition to Deberry *knowing* or *having reasonable cause to believe*

that Deberry had been *adjudicated as a mental defective* or had been *committed to any mental institution.* Testimony of Nelson that Deberry appeared to her to be merely nervous or in a hurry simply cannot support such a factual question, as a matter of law. To the extent that we here recognize a standard of care imposed by statute, we are not regulating the sale of firearms, but rather acknowledging possible civil liability for failure to follow a statutory standard. *See El Chico Corp. v. Poole,* 732 S.W.2d at 312.

Also contested in the summary judgment proceedings was whether Oshman's breached the standard of care in the sale of a firearm to Deberry which would constitute Oshman's duty to Clyde Peek in a simple negligence action. Additionally, Oshman's contested whether any duty is owed to a third party similarly situated to Clyde Peek. In our discussion of a statutory duty of the firearms seller as based upon 18 U.S.C. § 922(d), we have rejected Oshman's suggestion that no duty or liability of a firearms seller to injured third parties can arise unless the firearm sold is defective. It is true that Texas statutory law imposes no duty on the seller of a gun to make a determination of the purchaser's mental fitness. However, we also reject any suggestion that either the existence of the federal statute, or the nonexistence of a Texas statute, forecloses the further possibility of a common law negligence action brought by a third party against a seller of firearms, if in that instance there exists a duty upon which such negligence may be based.

 The essential elements of actionable negligence are the existence of a legal duty owed by one person to another; a breach of that duty; and injury to a person to whom the duty is owed as a proximate result of the breach. *See El Chico Corp. v. Poole,* 732 S.W.2d at 311; *Rosas v. Buddies Food Store,* 518 S.W.2d at 536; *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 531 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). "Negligence" [breach of duty] is the failure to do that which a person of ordinary prudence would

have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. *Vargas v. City of San Antonio*, 650 S.W. 2d 177, 179 (Tex.App.—San Antonio 1983 writ dism'd). Duty is the threshold inquiry in establishing negligence; a plaintiff must allege and prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *El Chico Corp. v. Poole*, 732 S.W.2d at 311; *see Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex.1976). Duty is the function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk. *El Chico Corp., supra* at 311. Factors weighing against imposition of a duty are the magnitude of the burden of guarding against the injury and consequence of placing that burden on the defendant. *See Otis Engineering v. Clark*, 668 S.W.2d 307, 309 (Tex.1983).

█ In *Hulsebosch v. Ramsey*, 435 S.W. 2d 161 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ), an unintentionally injured third party brought an action against the sellers of a rifle to a sixteen-year old minor. The minor had purchased the rifle as a Christmas gift to his father with the permission of his mother, who consented to the purchase in writing, and who was present while the purchase was made. It was established that the minor knew that the rifle was a dangerous and deadly weapon. The court in *Hulsebosch* stated its opinion that the sellers were "not liable to the third party appellants under the facts by reason of the independent negligent acts of the purchaser of the rifle." 435 S.W.2d at 163. Thus the court apparently based its opinion in part upon a principle similar to that more recently mentioned in *Nixon v. Mr. Property Management, supra,* that usually the criminal conduct of a third party as a superseding cause relieves the negligent actor from liability. *See* 690 S.W.2d at 550. One is not bound to anticipate negligent or unlawful conduct on the part of another. *DeWinne v. Allen,* 154 Tex. 316, 277 S.W.2d 95, 98 (1955); *Clifton v. Wilson Industries, Inc.* 589 S.W.2d 498, 499 (Tex.Civ.App.—Texarkana 1979, writ

ref'd n.r.e.); *Bodine v. Welder's Equipment Co.,* 520 S.W.2d 407, 413 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r. e.). It is clear, however, that the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. *Nixon, supra* at 550; *see Castillo v. Sears Roebuck & Co.,* 663 S.W.2d 60, 64 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The court in *Hulsebosch,* clarifying its opinion, stated "we do not hold that under no circumstances could an illegal sale of firearms have been a proximate cause of appellant's injuries." 435 S.W.2d at 164. Nevertheless, we deem it of first importance to determine in the case at hand whether a duty existed on the part of Oshman's and whether Oshman's breached that duty, before we address the element of causation, that being whether any breach of duty on Oshman's part foreseeably resulted in the injury to Peek.

We note that the court in *Hulsebosch, supra,* also offered the following analysis:

> But in an action by the injured third party against the sellers of a rifle, when a parent had permitted the sale of the rifle to the sixteen-year old minor as a Christmas gift to his father, no liability for damages can arise on the part of the sellers in the absence of a statute creating such liability. Texas has no such statute. 435 S.W.2d at 163.

We believe Oshman's incorrectly interprets and extrapolates this language in *Hulsebosch* to mean that there can be no liability of a seller of a firearm to a third party in Texas unless Texas so provides by statute. Reading the opinion as a whole, the above quoted sentence from *Hulsebosch* would appear to mean that in the particular circumstances of that case, no liability could attach under negligence principles unless there had been a statute, which statute might establish liability, if violated.

The most salient aspect of *Hulsebosch* was the court's statement that "[u]nder these circumstances we cannot hold ... that appellees [firearms sellers] failed to exercise ordinary care in the sale of the rifle and ammunition," taken together with

the court's specific holding that "appellees exercised ordinary care as a matter of law under the circumstances." 435 S.W.2d at 163, 164. Thus with regard to duty, *Hulsebosch* would suggest, if anything, that a standard of ordinary care on the part of a firearms seller does exist toward a third party who might be injured by an unreasonable sale of a firearm to a minor.

■ We agree with this aspect of *Hulsebosch*, and we find an appropriate analogy between the duty assumed in that case and the duty owed to third persons in the instance of firearms sales to mentally imbalanced persons. Specifically, with regard to the sale of a firearm to a *manifestly* irrational or mentally imbalanced person, we would impose a duty of ordinary care upon the seller because such a sale could foreseeably result in irresponsible use of the firearm by the purchaser with accompanying foreseeable injury to a third party.

Some courts in other states have held liability supportable under common law negligence principles where the prospective purchaser's manifest behavior or comportment have put the seller on notice that the purchaser, if possessed of a firearm, would foreseeably pose a danger to third persons. *See Phillips v. Roy*, 431 So.2d 849 (La.App. 1983); *Bernethy v. Walt Failor's Inc.*, 97 Wash.2d 929, 653 P.2d 280 (1982); *Angell v. F. Avanzini Lumber Co.*, 363 So.2d 571 (Fla.App.Dist. 2 1978). We are generally in accord with this principle.

■ In the case at hand, however, there is nothing in the summary judgment evidence to indicate that the purchaser was *manifestly* insane, irrational, mentally incompetent or mentally impaired. The extent of the evidence was that the purchaser appeared to one witness to be nervous, uptight and in a hurry, and that witness, although aware of past mental problems of the purchaser, did not alert the sales clerk to those problems. We also note that although the witness Nelson stated that Deberry appeared nervous to her, there appears to be no description by her of the physical manifestations of this nervousness. No evidence before the trial court indicated that the alleged nervousness of

Deberry at the time of sale was observably on a scale such that a mental disorder might be inferred by the ordinary observer. Nor is there any evidence of reasonably observable manifestations at the time of sale of agitation, instability, incompetence, recklessness or intent to commit a crime.

The summary judgment evidence considered by the trial court shows that during the course of the sales clerk's contact with Deberry, which lasted for more than twenty minutes, and during which the sales clerk observed Deberry, Deberry did nothing which would have led a reasonable person to believe that Deberry was mentally impaired or otherwise irresponsible with regard to the handling of firearms. Therefore, as a matter of law, the summary judgment proof establishes that there is no genuine issue of fact regarding the essential element of the plaintiffs' cause of action whether Oshmans's breached its duty of reasonable care toward any third party with respect to this particular sale.

Plaintiffs argue that Oshman's violated its own normal procedure or protocol of asking the customer what his purpose is in buying a gun. There is no testimony as to the aim of such procedure. The inquiry here, however, is not whether some internal store policy was followed. The question is whether Oshman's acted unreasonably in selling a firearm to Deberry. Negligence rests primarily upon the existence of reason to anticipate injury and failure to perform the duty arising on account of that anticipation, and if the actor could not have reasonably foreseen the resultant injury, or injuries similar in character, he is not to be held responsible therefor. *Armstrong v. Missouri–Kansas–Texas–R. Co. of Texas*, 233 S.W.2d 942, 945–46 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.), *cert. denied*, 342 U.S. 837, 72 S.Ct. 62, 96 L.Ed. 633. In the particular circumstances of this case, there was, as a matter of law, no reason for the firearms seller to anticipate an insane or criminal act of violence on the part of Deberry.

Since we hold that, as a matter of law, Oshman's did not breach its duty of reasonable care toward Clyde Peek in the circum-

stances here involved, and thus Oshman's acts complained of were non-negligent, we have no occasion to further inquire into a question of proximate cause. Appellant's point of error is overruled.

The judgment is affirmed.