781 S.W.2d 427 (1989)
TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 1; State Parks and Wildlife Department; State Department of Highways and Public Transportation, Appellants,
v.
Donna L. CROSSLAND, Individually and on Behalf of Chadwick Barry Crossland, Charles Barry Crossland, and Shawn Paul Crossland, Minors, and as Independent Executrix of the Estate of Woodrow Barry Crossland, Deceased; Gladys Chrismon; Sherrion Adams, Individually and on Behalf of Bryan Keith Adams, and Tracy Ann Walker, Minors, and as Independent Executrix of the Estate of Michael Willard Adams, Deceased, Appellees.
No. 2-88-071-CV.
Court of Appeals of Texas, Fort Worth.
November 22, 1989.
*430 Pope, Hardwicke, Christie, Harrell & Kelly, George F. Christie and Christopher A. Troutt, Fort Worth, Jim Maddox, Atty. Gen., Patricia M. Charlton, Asst. Atty. Gen., Austin, for appellants.
Law Offices of Windle Turley, PC, Richard N. Countiss and Edward H. Moore, Dallas, for appellees.
Before JOE SPURLOCK, II, HILL and LATTIMORE, JJ.

OPINION
LATTIMORE, Justice.
This is an appeal from a judgment in favor of plaintiffs in a wrongful death suit. TEX.CIV.PRAC. & REM.CODE § 71.002 (Vernon 1986). Plaintiffs/appellees are listed above and are hereinafter collectively referred to as "appellees." Defendants/appellants are Tarrant County Water Control and Improvement District No. 1 (Water District); State Parks and Wildlife Department (Parks and Wildlife Department); Department of Highways and Public Transportation of the State of Texas (Highway Department). Appellants have perfected this appeal from the judgment.
Judgment is reversed and rendered.
On May 28, 1982, Woodrow Crossland and Michael Adams were fatally injured in a boating accident on Cedar Creek Reservoir (reservoir) in Henderson County, Texas. The Crossland and Adams families went to the reservoir for the Memorial Day weekend arriving about 9:30 p.m. on Friday, May 28. The Caney Creek bridge (bridge) crosses a portion of the reservoir called Caney Creek Cove. The Adams owned a lot on Caney Creek Cove. A boat must go under the bridge to go from Caney Creek Cove into the main part of the reservoir. A boat must slow down to sit lower in the water in order to go safely under the bridge because of the amount of clearance between the water and the underside of the bridge.
About 11:00 p.m., Crossland and Adams decided to go fishing. They got into Sherrion Adams' sixteen-foot Sterncraft inboard/outboard boat and went out into Caney Creek Cove. The boat did not have headlights or a spotlight, but there was a fluorescent light inside the boat. Crossland and Adams were killed around 11:35 p.m., when their heads struck the underside of the bridge while they were trying to pass under the bridge.
The parties disagree on several issues of fact, for example: how much alcohol did Crossland and Adams drink before the accident; how fast was the boat going when it hit the bridge; was the bridge visible at night; were the decedents knowledgeable about the location of the bridge. All parties do agree Crossland and Adams lost their lives when they struck their heads on the underside of the bridge.
Appellees filed this wrongful death action against appellants seeking money damages under the Texas Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). Trial was to a jury which returned a verdict for appellees. The jury determined the comparative negligence percentages as follows: Parks and Wildlife Department, 45%; Highway Department, 30%; Water District, 20%; Michael Adams, 5%; Woodrow Crossland, 0%. The jury awarded a total of $1,282,000 damages. The trial court considered Parks and Wildlife Department and Highway Department to be liable as one governmental unit, the State of Texas. The judgment limited recovery under the Texas Tort Claims Act to $200,000 from the Water District ($100,000 for each decedent) and $200,000 from the State of Texas. TEX. REV.CIV.STAT.ANN. art. 6252-19 (Vernon 1970) (a limit of $250,000 per death is now provided by TEX.CIV.PRAC. & REM. CODE ANN. § 101.23 (Vernon Supp.1989)).
*431 Several issues in this case are governed by the Texas Civil Practices and Remedies Code which was effective September 1, 1985. At the time of the accident in 1982, the relevant statutes were found in the Texas Revised Civil Statutes. As noted above, the $100,000 limit of article 6252-19 has changed, but the language of the relevant statutes is still the same. For the sake of simplicity, we will refer only to the code.
The three appellants raised a total of eighty-seven points of error, but many of these points are redundant. For the sake of clarity and simplicity, we have grouped the points of error into nine contentions. Appellants contend the trial court erred in:
1. Overruling appellants' motions for judgment non obstante veredicto because appellants are entitled to governmental immunity because the bridge was constructed before the effective date of the Texas Tort Claims Act. Water District's point of error three; Highway Departments's points of error seven, and ten through fourteen; Parks and Wildlife Department's points of error seven through ten.
2. Overruling appellants' motions for judgment non obstante veredicto because appellants are not required by law to put lights on the bridge. Water District's point of error four; Highway Department's points of error ten through fourteen; Parks and Wildlife Department's points of error seven through ten.
3. Submitting the case to the jury as a special defect case because the bridge is not a special defect under TEX.CIV.PRAC. & REM.CODE ANN. § 101.022 (Vernon 1986). Water District's points of error ten through seventeen; Highway Department's points of error one through five; Parks and Wildlife Department's points of error eleven through fifteen and twenty-four through thirty.
4. Commenting on the evidence by using the term "dangerous obstruction" instead of "dangerous condition" in the jury charge. Water District's point of error nine; Highway Department's points of error twenty through twenty-two; Parks and Wildlife Department's points of error twenty-one through twenty-three.
5. Overruling Water District's motion for judgment non obstante veredicto and motion for new trial because there was no evidence or insufficient evidence to support the jury's finding that Water District committed an act or omission of negligence which was a proximate cause of the accident. Water District's point of error twenty.
6. Overruling Water District's motion for new trial because the jury's finding that Adams was only five percent negligent was against the overwhelming weight of the evidence. Water District's point of error twenty-one.
7. Overruling Water District's motion for judgment non obstante veredicto because the duty which the Water District owed the decedents was limited to the duty owed a trespasser under TEX.CIV.PRAC. & REM.CODE ANN. § 75.002 (Vernon 1986). Water District's points of error one and two.
8. Refusing to submit the issue of Crossland's negligence to the jury. Water District's points of error twenty-two through twenty-four.
9. Overruling Water District's motion to correct the judgment because the amount recoverable by the Adams plaintiffs should have been a total of $179,800 instead of $200,000. Water District's point of error twenty-five.
We do not address some points of error which are not necessary to our disposition of the case. TEX.R.APP.P. 90(a). Water District's points of error five through eight, eighteen and nineteen; Highway Departments points of error six through nine and fifteen through nineteen; Parks and Wildlife Department's points of error one through six, sixteen through twenty and twenty-four through thirty-two.
Appellees also raise a cross-point contending the damages limitation of the Texas Tort Claims Act is unconstitutional.
First Contention.
Appellants contend the trial court erred in rendering judgment for appellees *432 because appellants are protected by governmental immunity because the bridge and reservoir were constructed before the effective date of the Texas Tort Claims Act. We agree.
The Superintendent of the reservoir testified the reservoir and bridge were completed by 1967 and have not been modified. The Texas Tort Claims Act "does not apply to a claim based on an act or omission that occurred before January 1, 1970." TEX. CIV.PRAC. & REM.CODE ANN. § 101.061 (Vernon 1986). Appellees may not state a claim under the Tort Claims Act for any defect in the bridge or reservoir because any such defect would be due to an act or omission that occurred before 1970. In particular, the State will not be liable based on the design of the bridge and reservoir because the bridge and reservoir were designed before 1970. Burnett v. Texas Highway Dep't., 694 S.W.2d 210, 211-12 (Tex.App.Eastland 1985, writ ref'd n.r.e.). Lights, signs, and safety features are part of a design. Shives v. State, 743 S.W.2d 714, 716-17 (Tex.App.El Paso 1987, writ denied); Burnett, 694 S.W.2d at 212. Therefore, the State cannot be liable based on the failure to include lights, signs, and safety features in the original pre-1970 design.
A cause of action under the Texas Tort Claims Act must be based on an act or omission which occurred after 1970. Cf. Beggs v. Texas Dep't of Mental Health & Mental Ret., 496 S.W.2d 252, 254 (Tex.Civ. App.San Antonio 1973, writ ref'd) (claim which did not allege use of property did not state a claim within the Texas Tort Claims Act). The word "occur" means "to come into existence." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 817 (1983). An "omission" is "something neglected or left undone." Id. at 823. When the bridge and reservoir were completed the State did not provide instructions, lights, warnings, signs, or barriers, so these omissions occurred before 1970. After 1970, the State continued to leave undone the installation of warnings, so the omissions continued to exist, but appellees have not identified any new act or omission that occurred after 1970.
Appellees argue § 101.061 is inapplicable because their cause of action is not based on an act or omission that occurred before 1970. Instead they contend their cause of action is "based on an act or omission that occurred on the night of May 28, 1982" because "[i]t was then that the various appellants breached their duty to warn Adams and Crossland of the danger and it was then that their breach caused the collision in question."
However, appellees do not point to any specific act or omission other than the lack of lights at the bridge. The accident is the only relevant event which occurred after 1970, but the accident is not an act or omission by the State. Appellees fail to distinguish between an act or omission by the State and the alleged result of that act or omission. Appellees may argue that the omission of lights at the bridge caused the accident which occurred after 1970, but the accident is still not an act or omission of the State. Burnett, 694 S.W.2d at 211-12. In effect, appellees are asking this court to hold § 101.061 does not apply to the omission of lights, signs, and safety devices because the State could have warned of danger after 1970. We hold the plain language of § 101.061 does not admit this interpretation.
A plea of governmental immunity is a defensive doctrine and the government has the burden of submitting and proving the defense. City of Houston v. Bush, 566 S.W.2d 33, 35 (Tex.Civ.App.Beaumont 1978, writ ref'd n.r.e.). Appellants pled governmental immunity for pre-1970 acts in their original answers. Appellants proved the bridge and reservoir were completed before 1970. This is sufficient to establish, as a matter of law, appellants are entitled to governmental immunity under § 101.061. Appellees did not introduce evidence of any act or omission which occurred after 1970.
On appeal, appellees identify only one factor that could have changed since 1970; the water level in the reservoir. The water level was 322.03 mean sea level the day of *433 the accident. Before 1970, the reservoir was designed to be filled to 332 feet. A water level of 322.03 feet does not establish any post-1970 act or omission by the State that could affect a duty to furnish lights or lighted warnings. Appellees also contend the water level was "perhaps the highest it had ever been." That may be true, but it is no evidence the water level was outside design parameters. Appellant's points of error listed under the first contention are sustained.
Second Contention.
Appellants contend the trial court erred in overruling their motions for judgment non obstante veredicto because no law requires them to warn boaters of the existence of the bridge. We agree. The Texas Tort Claims Act does not apply to a claim based on:
(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.
TEX.CIV.PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986). We know of no clear-cut test for determining when a claim is precluded by this statute. See Christilles v. Southwest Texas State Univ., 639 S.W.2d 38, 42 (Tex.App.Austin 1982, writ ref'd n.r.e.); Comment, The "Policy Decision" Exemption of the Texas Tort Claims Act: State v. Terrell, 32 BAYLOR L.REV. 403, 410 (1980). However, it is well established that the design of roads and bridges is a discretionary function, and the State will not be liable for such decisions. Shives, 743 S.W.2d at 717; Burnett, 694 S.W.2d at 212; Stanford v. State Dep't of Highways, 635 S.W.2d 581, 582 (Tex. App.Dallas 1982, writ ref'd n.r.e.); Palmer v. City of Benbrook, 607 S.W.2d 295, 299 (Tex.Civ.App.Fort Worth 1980, writ ref'd n.r.e.). This application of the law is consistent with cases that hold decisions made at a policy level instead of operational level are exempt as policy decisions. Trinity River Authority v. Williams, 659 S.W.2d 714, 723 (Tex.App.Beaumont 1983), aff'd in part, rev'd in part, 689 S.W.2d 883 (Tex.1985). One engineer who helped design the bridge testified about the stringent review procedures used to insure the bridge conformed to the State's standards and policies. The design of the bridge, like the design of any public work, involved many policy-level decisions.
Appellees did not identify any law which required appellants to warn boaters of the bridge. Cf. Burnett, 694 S.W.2d at 212. Instead, they argue each appellant made a policy decision to warn of danger because each appellant has posted other warnings, e.g., clearance signs on highway bridges. Therefore, appellees argue, the policy decision was to warn of danger and the decision not to light the bridge was an operational one. Doubtless the State desires to make Texas a safer place, but this general policy goal does not make the State liable for all possible failures to warn. The State may still make specific policy decisions about the design of State projects such as whether to include lights in the design. Appellants' points of error listed under the second contention are sustained.
Third Contention.
Appellees brought this suit under TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b) on the theory the accident was caused by a "special defect." Appellants contend the trial court erred in submitting the case to the jury as a special defect case. We agree.
The term "special defect" is not defined in the Texas Civil Practice and Remedies Code. The common meaning of the word "special" is "distinguished by some unusual quality" or "being other than the usual." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1131 (1983). We hold a special defect is some defect which is out of the ordinary course of events rather than a long-standing, routine, or permanent defect. Sutton v. State Highway Dep't, 549 S.W.2d 59, 61 (Tex.Civ.App. Waco 1977, writ ref'd n.r.e.) (special defect *434 may be "specially created"; "routine maintenance defect" is not a special defect).
This construction of the statute is supported by the ejusdem generis rule mandated by the Texas Supreme Court. County of Harris v. Eaton, 573 S.W.2d 177, 179 (Tex.1978). That rule mandates we construe "special defects" to include those defects of the same kind or class as the examples mentioned in the statute. Id. The statute gives two examples: excavations or obstructions on highways. TEX. CIV.PRAC. & REM.CODE ANN. § 101.022. Drivers have a reasonable expectation the highway is usually free of obstructions and excavations, and the State should put out warning signs if there are unusual obstructions on the road. Eaton, 573 S.W.2d at 180. Prior users would not be aware of such new problems with a road. This reflects a sound public policy of requiring the State to give additional warnings about unusual or unexpected dangers.
In this case, there is no indication of any circumstance out of the ordinary course of events. It is undisputed a boat would need to reduce speed in order to go safely underneath the bridge, but the bridge and reservoir had been in the same condition for many years. Appellees contend the water level may have been higher than usual, but the decedents had traveled under the bridge on previous trips to the reservoir, and they were aware that, whatever the water level, they always needed to reduce speed at the bridge. Appellants' points of error listed under the third contention are sustained.
Fourth Contention.
Appellants contend the trial court impermissibly commented on the evidence by using the term "dangerous obstruction" rather than "dangerous condition" in the court's charge to the jury. An obstruction is a hindrance, obstacle, or barrier; something which obstructs or impedes. Eaton, 573 S.W.2d at 181 (Steakley, J., dissenting). Appellants each argue the decedents knew they needed to reduce their speed to go under the bridge. Therefore, appellants agree the bridge is an obstruction; the disputed issue is whether the bridge is a dangerous obstruction. Appellants' points of error listed under the fourth contention are overruled.
Fifth Contention.
The Water District contends the trial court erred in overruling its motion for judgment non obstante veredicto and motion for new trial because there was no evidence or insufficient evidence to support the jury's finding that the Water District committed an act or omission of negligence which was a proximate cause of the accident. Actionable negligence consists of three elements: (1) a legal duty, (2) breach of that duty, and (3) injury proximately caused by the breach of duty. Peek v. Oshman's Sporting Goods, Inc., 768 S.W.2d 841, 845 (Tex.App.San Antonio 1989, writ denied). "Duty is the threshold inquiry in establishing negligence; a plaintiff must allege and prove the existence and violation of a duty owed to him by the defendant to establish liability in tort." Id. at 846; Bryant v. Gulf Oil Corp., 694 S.W.2d 443, 445 (Tex.App.Amarillo 1985, writ ref'd n.r.e.) (requirement that plaintiff establish existence of legal duty not changed by Parker v. Highland Park, Inc., 565 S.W.2d 512 (Tex.1978)). "Whether a duty exists under the facts and circumstances of a particular case is a question of law." J.R. Beadel and Co. v. De La Garza, 690 S.W.2d 71, 73 (Tex.App.Dallas 1985, writ ref'd n.r.e.). "Duty is the function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk. Factors weighing against imposition of a duty are the magnitude of the burden of guarding against the injury and consequence of placing that burden on the defendant." Peek, 768 S.W.2d at 846 (citations omitted).
First, we consider the issue of foreseeability. Foreseeability, as it relates to the determination of the scope of the duty owed, is a question of law. Atchison, Topeka & Santa Fe Ry. v. Standard, 696 S.W.2d 476, 479 (Tex.App.Eastland 1985, writ ref'd n.r.e.). One is not bound to foresee negligent conduct by another. Peek, 768 S.W.2d at 846. Therefore, we *435 must determine if the type of conduct engaged in by the decedents is so negligent that appellants were not bound to foresee such conduct. We must consider whether "the danger is so great and the condition so known and appreciated that ... reasonable minds can draw no other conclusion than that plaintiff was negligent." Parker, 565 S.W.2d at 521.
In this case, the decedents faced the most common and obvious danger known to man, darkness. Parker, 565 S.W.2d at 512 (plaintiff not contributorily negligent because she used extreme care in descending dark stairs); see generally, Annot. Premises Liability: Proceeding in the Dark Across Interior Premises as Contributory Negligence, 28 A.L.R.3d 605 (1969); Annot. Premises Liability: Proceeding in the Dark Across Exterior Premises as Contributory Negligence, 23 A.L.R.3d 441 (1969); Annot., Comment NotePremises Liability: Proceeding in the Dark as Contributory Negligence, 22 A.L.R.3d 286 (1968). The bridge was dangerous only in the sense that one might run into it in the dark.
Courts in other jurisdictions have held plaintiffs are negligent as a matter of law when plaintiff was injured while walking in the wilderness after dark and without a light. Watson v. Manitou & Pikes Peak Ry. Co., 41 Colo. 138, 92 P. 17, 20 (1907); Harris v. Midwest Oil Co., 67 S.D. 300, 292 N.W. 397, 400 (1940). The decedents' conduct was far more negligent than merely walking in the dark because they were moving forward in a motorboat. Hardin v. Jackson Yacht Club, Inc., 232 So.2d 721, 726 (Miss.1970) (boater is bound to keep his craft under control so he can stop within the range of his vision). The decedents were required to exercise ordinary care for their own safety and they had the duty to keep a proper lookout. Ingram v. Texas Indus., Inc., 396 S.W.2d 423, 424 (Tex.Civ.App.Fort Worth 1965, writ ref'd n.r.e.) (one is bound to look and listen where situation suggests such precautions and listen where situation suggests such precautions may prevent injury). Crossland argues that there was evidence visibility on the lake was poor due to fog. If so, the fog was just as apparent as the darkness, and the decedents had even more reason to use great care in piloting the boat.
Propelling a boat or any other motor vehicle into total darkness is not the act of a reasonable and prudent person. Appellants were not bound to foresee and guard against such irrational conduct.
Second, we consider the magnitude of the burden of guarding against the injury and the consequence of placing the burden on appellants. As discussed above concerning the second contention, appellants had no statutory duty to provide lights on the bridge. Cf. Hardin, 232 So.2d at 727 (defendant Yacht Club was not required to light retaining wall). Crossland argues the bridge should have been lighted because it was a dangerous obstruction, but Crossland does not explain why the bridge should be considered more dangerous than any other unlighted recreational area. With 4,790 square miles of inland water and more than 200 major reservoirs, Texas ranks second behind Minnesota for the most inland water among the continental states. Crossland has not cited any authority indicating appellants have a duty to illuminate the natural or man-made obstacles in these reservoirs. We do not believe it would be realistic for this court to place this burden on the State. The decedents simply had no reasonable expectation that all obstacles on the reservoir would be lighted.
In summary, vast areas of Texas are devoid of artificial illumination, and the State has no duty to light the great outdoors. Recreational boaters may not go cruising blindly into the night, and then successfully sue the owner of whatever property halts their forward progress. Water District's twentieth point of error is sustained.
Sixth Contention.
Water District contends the trial court erred in overruling its motion for new trial because the jury's finding that Michael Adams was only five percent negligent was against the overwhelming weight *436 of the evidence. In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); Ford Motor Co. v. Nowak, 638 S.W.2d 582, 585 (Tex.App.Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).
The Supreme Court of Texas has cautioned the courts of appeals in factual insufficiency cases to detail the evidence relevant to the issue in consideration and clearly state "why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (opinion on reh'g). Further, the supreme court has instructed that in our opinions we should state in what regard the contrary evidence greatly outweighs the evidence in support of the jury's verdict. See id.; see also Lofton v. Texas Brine Corp., 720 S.W.2d 804, 805 (Tex.1986) (per curiam).
The degree of negligence is ordinarily a question of fact, but, like any other question of fact, the jury's finding on negligence may be reversed when it is so against the great weight and preponderance of the evidence as to be manifestly unjust. Castro v. Hernandez-Davila, 694 S.W.2d 575, 577 (Tex.App.Corpus Christi 1985, no writ). Appellees contend appellants mischaracterize the evidence in that appellants' briefs attempt to "paint a picture of two drunks driving fast and running into a well-lit and easily observable bridge that both had crossed under many times." Appellees Brief at 6-7. We will assume, as appellees contend, that the bridge was dark and the decedents were sober, boating at a moderate speed and unfamiliar with the bridge. The undisputed fact remains that the decedents were boating at night with no light to reveal obstacles in their path. Further, the decedents had a fluorescent light inside the boat. Appellees contend the light inside the boat would not impair the driver's ability to see out of the boat. However, the testimony at trial was as follows:
Q I think you answered in response to Mr. Christie's question, it would be more difficult to see out of a boat if you had a light on the inside. If you had a light on the inside of your boat in the back behind where the driver sits, that wouldn't affect his forward vision, would it, significantly?
A It would probably reflect off of the windshield from the inside and being dark outside you'd get a bright surface inside.
Q But that wouldn't totally blind him or prevent him from seeing?
A It shouldn't.
The fluorescent light may not have totally blinded decedents, but it would certainly have impaired their night vision.
As discussed above, propelling a boat forward into total darkness is not the act of a reasonable and prudent person. This is true even if the decedents were sober and especially true if the decedents were unfamiliar with the area. The finding of only five percent negligence for Michael Adams is so against the great weight and preponderance of the evidence as to be manifestly unjust. Water District's twenty-first point of error is sustained.
Seventh Contention.
The Water District contends the trial court erred in overruling their motion for judgment non obstante veredicto because they owed the decedents no greater duty than would be owed a trespasser, and there is no evidence they breached this duty. "The legal duty the landowner owes a trespasser is only not to injure him willfully *437 ... or through gross negligence and to warn of or make safe dangerous conditions actually known." Mendoza v. City of Corpus Christi, 700 S.W.2d 652, 654 (Tex.App. Corpus Christi 1985, writ ref'd n.r.e.).
If an owner, lessee, or occupant of real property gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:
(1) assure that the premises are safe for that purpose;
(2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or
(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.
TEX.CIV.PRAC. & REM.CODE ANN. § 75.002 (Vernon 1986). This statute serves the salutary purpose of encouraging landowners to allow the public to enjoy outdoor recreation on the landowner's property by limiting the liability of the landowner for personal injury which often results from vigorous outdoor activities. Cf. Seminara v. Highland Lake Bible Conference, 112 A.D.2d 630, 492 N.Y.S.2d 146, 148 (1985) (discussing legislative intent of New York statute). Appellees do not dispute appellants gave the decedents permission to use the reservoir for recreational purposes. Instead, they argue the statute does not apply because (1) the statute does not apply to the State and (2) the decedents are not trespassers.
First, appellees argue § 75.002 does not apply to the State because TEX. CIV.PRAC. & REM.CODE ANN. § 101.022 controls the duty owed by a governmental unit and § 101.022 does not include an exception for § 75.002. Section 101.022 provides a governmental unit will owe a claimant "only the duty that a private person owes to a licensee on private property." The State has limited liability under § 75.002 because a private person has limited liability under § 75.002. City of Denton v. Van Page, 701 S.W.2d 831, 834 (Tex.1986) (Texas Tort Claims Act does not impose any new duties); cf. Hegg v. United States, 817 F.2d 1328, 1329-30 (8th Cir. 1987) (applying Iowa law); Ewell v. United States, 776 F.2d 246, 248-49 (10th Cir.1985) (applying Utah law); Schneider v. U.S.A., Acadia Nat'l Park, 760 F.2d 366, 367 (1st Cir.1985) (applying Maine law); Gard v. United States, 594 F.2d 1230, 1233 (9th Cir.1979) (applying Nevada law).
Second, appellees argue § 75.002 should only apply if the injured party was a trespasser. We do not adopt this illogical construction of § 75.002. Contra Trinity River Authority, 659 S.W.2d at 720.
As stated above, appellees vigorously contend § 75.002 should not apply in this case, but appellees do not argue that, if § 75.002 does apply, appellants violated the duty owed a trespasser. Our review of the evidence reveals no indication of wanton or malicious acts by the State. Michael Warren, a game warden, testified there has been another accident at the bridge since the Adams/Crossland accident, but there is no evidence the State was aware of any danger before the Adams/Crossland accident. The Water District's points of error listed under the seventh contention are sustained.
Eighth Contention.
The Water District contends the trial court erred in refusing to submit to the jury special issues which asked the jury to determine whether Woodrow Crossland committed certain acts of negligence. In their briefs, all parties seem to assume Michael Adams was operating the boat and Woodrow Crossland was a passenger. The evidence shows Sherrion Adams owned the boat. The Water District contends the evidence raised the issue of whether Woodrow Crossland had a duty to maintain a proper lookout. Usually, the passenger in a car has no duty to keep a proper lookout. Tipton v. Stuart, 480 S.W.2d 795, 798 (Tex. Civ.App.Fort Worth 1972, writ ref'd n.r. e.). However, a passenger may have a duty to maintain a proper lookout if he should be aware the driver is likely to be inattentive or careless. Id. Woodrow Crossland should have been aware Michael Adams was not maintaining a proper lookout *438 because the darkness should have been equally obvious to both men. Id. at 799 (dark, unlighted road). The Water District's points of error listed under the eighth contention are sustained.
Ninth Contention.
The Water District contends the trial court erred in awarding $200,000 based on the findings of the jury. As noted above, the jury findings were not supported by the evidence, but even if the jury findings were valid, the trial court erred. The jury found a total of $399,000 in damages for the death of Michael Adams. Therefore, the Water District was liable for $79,800 (20%) and the State of Texas was liable for $297,250 (45% for Parks and Wildlife Department plus 30% for the Highway Department). The trial court held the Water District and the State of Texas jointly and severally liable except the judgment was not enforceable against the Water District or the State for any amount greater than $100,000 each.
The issue of whether the Water District may be held jointly and severally liable for an amount over $79,800 requires us to construe two statutes. TEX.REV.CIV.STAT. ANN. art. 6252-19 § 3 (governmental liability limited to $100,000 per person); TEX. CIV.PRAC. & REM.CODE ANN. § 33.013 (defendants jointly and severally liable). We must determine the order in which the statutes should have been applied by the trial court. University of Texas at El Paso v. Nava, 701 S.W.2d 71, 72 (Tex.App. El Paso 1985, no writ) (determine proportionate damages under TEX.CIV.PRAC. & REM.CODE ANN. § 33.012 before reducing liability under TEX.CIV.PRAC. & REM.CODE ANN. § 101.023). Appellees contend the trial court was correct in holding the Water District and State jointly and severally liable for damages and then limiting recovery to $100,000 each. The Water District contends the trial court should have first limited recovery to $100,000 from the State and $79,800 from the Water District, then joint and several liability could not increase appellants' total liability above $179,800. We have not found any previous case which discusses this narrow issue, so we look at the language and intent of the statutes.
Section 33.013 provides each defendant is jointly and severally liable for the entire amount of "judgment awarded the claimant." Use of the word "judgment," as opposed to "damages" or "liability," connotes a certain degree of finality. See Lindley v. Flores, 672 S.W.2d 612, 614 (Tex.App.Corpus Christi 1984, no writ) ("judgment" concludes controversy between parties); The Stone Fox v. State, 668 S.W.2d 911, 912 (Tex.App.Houston [14th Dist.] 1984, no writ) (per curiam) ("judgment" means final judgment); BLACK'S LAW DICTIONARY, 755 (5th Ed.1979) ("The law's last word in a judicial controversy"). We hold the trial court should have first determined the liability of each individual defendant before declaring the defendants jointly and severally liable for the amount of the judgment.
As noted above, the jury found the damages resulting from the Water District's negligence to be $79,800, which does not exceed the $100,000 limit of article 6252-19. University of Texas, 701 S.W.2d at 72. The jury found damages resulting from the State's negligence to be $229,250, so the State's liability would be limited to $100,000. Therefore, the total amount of the judgment would be $179,800, and joint and several liability does not increase the amount of judgment to $200,000. The trial court could then hold the Water District and the State to be jointly and severally liable. County of Brazoria v. Radtke, 566 S.W.2d 326, 330 (Tex.Civ.App.Beaumont 1978, writ ref'd n.r.e.). However, neither the State nor Water District could be held jointly and severally liable for an amount over $100,000 because the final judgment must still recognize the $100,000 limit on any kind of liability.
This interpretation of the statutes is in concert with their purposes. The purpose of the Texas Tort Claims Act is to provide a limited waiver of the State's governmental immunity. University of Texas, 701 S.W.2d at 72. We do not believe the legislature intended to limit the State's liability by transferring any liability in excess of $100,000 to another party. Likewise, joint *439 and several liability under § 33.013 was not intended to increase the total amount of a judgment. The Water District's twenty-fifth point of error is sustained.
Crosspoint
In a cross-point, appellees argue the damages limitations of the Texas Tort Claims Act are unconstitutional. This court rejected the same argument in Tarrant County Hosp. Dist. v. Ray, 712 S.W.2d 271, 273 (Tex.App.Fort Worth 1986, writ ref'd (n.r.e.). Appellees argue the limited waiver of liability of the Texas Tort Claims Act is unconstitutional under the two-prong test of Sax v. Votteler, 648 S.W.2d 661, 666 (Tex.1983). A statute may be unconstitutional if it can be shown that (1) the litigant has a cognizable common-law cause of action that is being restricted and (2) the restriction is unreasonable or arbitrary when balanced against the statute. Id. Governmental immunity does not violate this standard because a litigant does not have a cognizable common-law cause of action against the State and the Texas Tort Claims Act does not take away any common-law right. Tarrant County Hosp. Dist., 712 S.W.2d at 273; see also Davis v. County of Lubbock, 486 S.W.2d 109, 110 (Tex.Civ.App.Amarillo 1972, no writ). Appellees observe that since our decision in Tarrant County Hosp. Dist., the Texas Supreme Court decided Lucas v. United States, 757 S.W.2d 687 (Tex.1988). Lucas did not involve a challenge to governmental immunity because suit was brought under the Federal Tort Claims Act which provides the federal government is liable to the same extent as a private individual. 28 U.S.C. § 2674 (1965); Lucas v. United States, 807 F.2d 414, 417 (5th Cir. 1986). Appellees cite Lucas, but do not explain why the case might be relevant. The cross-point has no merit beyond persistence in challenging the long-established law of governmental immunity. Cf. Luke, 18:2-5.
Judgment is reversed and rendered that appellees take nothing.